UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

NORTH AMERICAN DISMANTLING
CORP.,

    Plaintiff

v.

AEP GENERATION RESOURCES, INC.,

    Defendant–Counterclaimant.

Case No. 2:17-cv-809
CHIEF JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Elizabeth P. Deavers

## OPINION AND ORDER

This matter is before the Court on a motion filed by Plaintiff North American Dismantling Corporation ("Contractor") seeking to dismiss a counterclaim asserted by Defendant AEP Generation Resources, Inc. ("Owner"). (ECF No. 15.) For the reasons that follow, Owner's motion to dismiss is **DENIED**.

**I.    Background**

Owner owns the Tidd Power Plant ("Power Plant") in Brilliant, Ohio. (Counterclaim, ¶4, ECF No. 10, at PAGE ID # 180–81.) Contractor is a demolition company. (Complaint, ECF No. 1, at ¶ 17, at PAGE ID # 4.) Owner and Contractor entered into a demolition contract ("the Agreement")[1] pursuant to which Contractor was obligated to demolish the Power Plant by or before April 30, 2016. (Counterclaim, ¶¶ 4–5, ECF No. 10, at PAGE ID # 180–81.)

---

[1] The Agreement is comprised of a series of separate documents, that when taken as a whole, establish the parties' obligations. (Complaint, ¶26, at PAGE ID # 5.) Contractor attached some, but not all, of those documents as Exhibits to its Complaint. (ECF Nos. 1-2, 1-3, 1-4, 1-5.) Contractor attached several additional documents that make up the Agreement to its motion to dismiss Owner's counterclaim. (ECF No. 15, at PAGE ID # 225–276.) The Court finds that the Compliant referred to the Agreement in its entirety.

The "General Terms and Conditions for Labor and Services" section of the Agreement contains the following provisions:

23.0 DEFAULT

    23.1    The occurrence of any of the following shall constitute an "Event of Default":

        23.1.1 Contractor files a petition in bankruptcy, or if its creditors file an involuntary petition in bankruptcy, or if it makes a general assignment for the benefit of its creditors, or a receiver is appointed on account of its insolvency.

        23.1.2 Contractor (a) fails to maintain the schedule set forth in the Contract, or (b) fails to promptly pay Subcontractors for material or labor, or (c) commits repeated or substantial violations of laws, rules, regulations or policies, or (d) fails to perform in accordance with the Contract, and Contractor fails to take corrective action or submit an acceptable plan within two (2) Business Days after the receipt of a notice of non-conformance from Owner.

    23.2    Upon an Event of Default, Owner may take any or all of the following actions without affecting the Contract Price or schedule:

        . . .

        (c) Owner may pursue damages for delay under the terms of Article 24.0;

24.0 DAMAGES FOR DELAY

    24.1    Contractor shall be liable for any direct damages incurred by Owner arising out of Contractor's failure to perform on time.

    24.2    In lieu of Section 24.1, if the parties have agreed to liquidate the amount of direct damages resulting from Contractor's delay, the parties agree that such damages which might be incurred by Owner as a result of Contractor's delay in performance are uncertain and would be difficult to calculate. The parties agree that the liquidated damages contained in the Contract would be reasonable and fair compensation for late performance. Contractor commits to pay and Owner agrees to accept such sum as liquidated damages and not as a penalty in the event of late performance.

(ECF No. 15, at PAGE ID # 241–42.) Another portion of the Agreement contains a liquidated damages provision capping damages at $120,000. (ECF No. 1–5, at PAGE ID # 143–44.) The Agreement contains an Ohio choice–of–law provision. (*Id.* at PAGE ID # 247.)

2

On September 13, 2017, Contractor initiated this action. (Complaint, ECF No. 1.) In the Complaint, Contractor alleges that during the course of the demolition project it encountered unexpected site conditions that caused delays in completion and required it to do more work than had originally been anticipated under the Agreement. (*Id.*, ¶ 158, at PAGE ID # 27.) Such conditions included, for example, hidden asbestos materials that required abatement work exceeding that which had been part of the project's original scope; excessive debris and sediment that made water removal more difficult than anticipated when sealing the Power Plant's intake and discharge tunnels; persistent flooding in the Power Plant's basement; and unforeseen costs related to the design and installation of an engineered backfill system. (*See id.*, ¶¶ 60–77, 86–99, 100–133, 134–135, at PAGE ID # 11–14, 16–23.) Contractor asserts that it completed all the work that was originally required of it as well as additional work at the direction and insistence of Owner, but that it has not been fully compensated. (*Id.*, ¶ 157, 159, at PAGE ID #27.) Contractor further alleges that the parties amended or waived the original terms of the Agreement and agreed to compensate Contractor for material increase in its demolition costs, the scope of work, and the time needed to complete the demolition project. (*Id.*, ¶¶ 47, 156, at PAGE ID # 9, 26–27.) Contractor alleges breach of contract by Owner, quantum meruit, and unjust enrichment.

Owner answered the allegations in the Complaint and asserted a counterclaim. (Counterclaim, ECF No. 15.) Owner alleges that Contractor's performance of certain duties was delayed by Contractor's performance failures. Owner alleges that Contractor destroyed a shower building that was not slated for demolition and failed to rebuild it in a timely manner, and that Owner incurred the cost of providing alternate facilities for its workers due to Contractor's delay. (*Id.*, ¶¶ 7–17, 41–42, at PAGE ID # 181–82, 185). Owner alleges that Contractor unilaterally

3

redesigned a pre-approved backfill plan, which delayed its installation start date, and that after installation started, Contractor failed install the engineered backfill in a timely manner. (*Id.*, ¶¶18–23, 32–37, 43–44, 49, at PAGE ID # 182-86.) Owner alleges that Contractor failed to timely identify hidden asbestos, estimate removal efforts, and complete abatement in a timely manner. (*Id.*, ¶¶ 24–29, 45–46, at PAGE ID # 183–185.) Owner alleges that Contractor failed to complete below–grade demolition in a timely manner due to self-inflicted performance problems. (*Id.*, ¶¶ 30–31, 48, at PAGE ID #184, 186.) Owner also alleges that it incurred costs because it had to pay for additional on-site management and support services during Contractor's delays. (*Id.*, ¶¶ 44, 46, 48, 50, at PAGE ID # 185–86.) Owner's alleges breach of the Agreement by Contractor and that it has suffered damages that exceed $75,000.00. (*Id.*, ¶51, at PAGE ID # 186.)

Contractor moves to dismiss Owner's breach of contract counterclaim on the basis that Owner has failed to plead that it provided Contractor with a notice of default and an opportunity to cure as required by provision 23.1.2 of the Agreement. (ECF No. 15, at PAGE ID # 218.) Contractor also contends that Owner's damages are limited to $120,000 pursuant to the Agreement's liquidated damages clause and moves the Court to dismiss that portion of Owner's Counterclaim seeking damages in excess of that amount. (*Id.*) Owner responds that the notice requirement does not apply to defaults occasioned by Contractor's failure to maintain a schedule. (ECF No. 18, at PAGE ID #290–91). Owner also urges that the applicability of the liquidated damages provision is not suitable for a motion to dismiss. (*Id.*, at PAGE ID # 292.)

II.     **Standard of Review**

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss for failure to

4

state a claim under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to "state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (clarifying the plausibility standard articulated in *Twombly*). "A claim has facial plausibility when the plaintiff pleas factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The factual allegations of a pleading "must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555. "All of the well-pleaded allegations of the complaint must be treated as true, though we need not accept Plaintiff's legal conclusions or draw unwarranted factual inferences." *Thomas v. Publishers Clearing House, Inc.*, 29 Fed. App'x. 319, 322 (6th Cir. 2002). The Court "need not, however, accept conclusory allegations or conclusions of law dressed up as facts." *Erie Cnty., Ohio v. Morton Salt, Inc.*, 702 F.3d 860, 867 (6th Cir. 2012). In ruling on a motion to dismiss, the court may consider written instruments that are exhibits to a pleading, as those are considered part of the pleading for all purposes. *Campbell v. Nationstar Mortg.*, No. 14-1751, 611 Fed. App'x. 288, 291-92, 2015 WL 2084023, at *3 (6th Cir. May 6, 2015) (citing Fed.R.Civ.P. 10(c)). A court may also consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Id.* (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).

### III. Analysis

Under Ohio law, a notice provision in a contract is a condition precedent to a party's recovery for breach. The Sixth Circuit has explained:

> It is well established under Ohio contract law that a party must comply with all express conditions to be performed in case of breach before it can claim damages by reason of the breach. *Bell Brothers v. Robinson*, 5 Ohio App. 454, 458 (Ohio Ct. App. 1916). A right of action requiring notice as a condition precedent cannot

5

> be enforced unless the notice provided for has been given. 18 O.Jur.3d Contracts § 210 (1980); 17 Am.Jur.2d Contracts § 356 (1964); 3a A. Corbin, *Corbin On Contracts,* §727(1960).

*Au Rustproofing Ctr., Inc. v. Gulf Oil Corp.*, 755 F.2d 1231, 1237 (6th Cir. 1985). In this case, Contractor moves to dismiss Owner's counterclaim because Owner has not pleaded that it provided Contractor with notice of default. The Court concludes, however, that Owner was not required to do so.

"Under Ohio law, the interpretation of written contract terms, including the determination of whether those terms are ambiguous, is a matter of law for initial determination by the court." *Savedoff v. Access Grp., Inc.*, 524 F.3d 754, 763 (6th Cir. 2008) (citing *Inland Refuse Transfer Co. v. Browning-Ferris Indus. of Ohio, Inc.*, 474 N.E.2d 271, 272-73 (Ohio 1984)). "In determining whether contractual language is ambiguous, the contract 'must be construed as a whole[.]' " *Id.* (quoting *Tri-State Grp., Inc. v. Ohio Edison Co.*, 782 N.E.2d 1240, 1246 (Ohio Ct. App. 2002)). Further, "[t]he role of courts in examining contracts is to ascertain the intent of the parties." *City of St. Marys v. Auglaize Cnty. Bd. of Comm'rs*, 875 N.E.2d 561, 566 (Ohio 2007). "Where the terms in a contract are not ambiguous, courts are constrained to apply the plain language of the contract[,]" id., and "[t]he intent of the parties is presumed to reside in the language they chose to use in their agreement." *Graham v. Drydock Coal Co.*, 667 N.E.2d 949, 952 (Ohio 1996).

Section 23.1.2 of the Agreement indicates that Contractor could default in four ways. Specifically, the Agreement provides that Contractor would be in default if it:

(a) fails to maintain the schedule set forth in the Contract, or

(b) fails to promptly pay Subcontractors for material or labor, or

(c) commits repeated or substantial violations of laws, rules, regulations or policies, or

> (d) fails to perform in accordance with the Contract, and Contractor fails to take corrective action or submit an acceptable plan within two (2) Business Days after the receipt of a notice of non-conformance from Owner.

(ECF No. 15, at PAGE ID # 241.) In its counterclaim for breach of contract, Owner alleges that Contractor defaulted by failing to maintain the schedule set forth in the Agreement, an event of default described in 23.12(a). The Court finds that the language of that provision is not ambiguous, and that the provision does not contain a notice requirement. The Court is also not persuaded that the language of the notice provision in 23.12(d) indicates in any way that it applied to defaults in clause 23.12(a). The notice provision in 23.12(d) explicitly refers to a "notice of non-conformance." It does not refer to a notice that Contractor had failed to maintain the schedule set forth in the Contract. For that reason, the Court concludes that Owner's failure to plead notice is not fatal to its counterclaim alleging a default under 23.12(a).

The Court also finds that the applicability of the liquidated damages provision is not an issue that can be properly addressed here in a motion made under Rule 12(b)(6). That Rule is designed to test the sufficiency of the parties' pleadings. To state a counterclaim for breach of contract under Ohio law, Owner must plead (1) the existence of a contract, (2) performance by Owner, (3) Contractor's breach of the contract, and (4) damage or loss to Owner as a result of the breach. *V & M Star Steel v. Centimark Corp.*, 678 F.3d 459, 465 (6th Cir. 2012). Owner has alleged that it incurred costs in excess of $75,000.00 because it had to pay for additional on-site management and support services as a result of Contractor's delays. The enforceability and applicability of the $120,000.00 cap in the liquidated damages provision does not impact the fact that Owner has sufficiently alleged that it has suffered damages as a result of Contractor's purported breach. The Court declines to grant Contractor the relief that it seeks.

7

## CONCLUSION

For the reasons set forth above, the **DENIES** Contractor's Motion to Dismiss Counterclaim. (ECF No. 15.)

**IT IS SO ORDERED.**

   9-28-2018
**DATE**

EDMUND A. SARGUS, JR.
**CHIEF UNITED STATES DISTRICT JUDGE**